IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA,

v.  Criminal Action No. 3:17-cr-119

LEODAN ITEHUA,

Defendant.

## OPINION

This matter comes before the Court on the defendant's motion to dismiss. A grand jury indicted Itehua for illegal reentry in violation of 8 U.S.C. § 1326. Itehua now moves to dismiss the indictment by challenging the validity of his 2011 deportation order, itself an element of the illegal reentry charge. Because the flawed order cannot support a conviction, the Court will grant the motion to dismiss.

## I. BACKGROUND

On June 1, 2011, the U.S. Immigration and Customs Enforcement ("ICE") took custody of Itehua, a Mexican native and citizen. He appeared before an Immigration Judge ("IJ") on June 7, 2011. At the hearing, the IJ informed Itehua that he might be eligible for cancellation of removal, which would give him residency in the United States if granted. Itehua replied that he did not want to apply for cancellation. The IJ asked Itehua if he had sufficient funds to leave the country voluntarily, and Itehua said he did not. Then, the IJ ordered Itehua removed from the United States to Mexico. When the IJ advised Itehua that he could either appeal the removal decision or accept it as final, Itehua accepted it.

ICE returned Itehua to Mexico, and he later reentered the United States without permission. ICE took custody of him in Virginia, and this prosecution followed. Itehua now

argues that his invalid 2011 deportation order keeps the government from prosecuting him for illegal reentry. Specifically, Itehua says that in 2011 the IJ did not advise him of his eligibility for voluntary departure, as 8 C.F.R. § 1240.11(a)(2) requires.[1] Itehua claims that he would have asked for voluntary departure if he had known of its availability, and would have gathered the funds to travel back to Mexico.

## II. DISCUSSION

### A. *Collateral Attack of a Deportation Order*

A deportation order is an element of the illegal reentry offense. *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005). A defendant may collaterally attack an underlying deportation order in a criminal prosecution for illegal reentry, *United States v. Mendoza-Lopez*, 481 U.S. 828, 839 (1987), if he satisfies three requirements. *El Shami*, 434 F.3d at 663 (citing 8 U.S.C. § 1326(d)). He must show that:

> (1) he exhausted any administrative remedies that may have been available to seek relief against the order;
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the deportation order was fundamentally unfair.

8 U.S.C. § 1326(d).

Reviewing courts often excuse a defendant's failure to exhaust administrative remedies and seek judicial review when a procedural flaw in the immigration proceeding causes that failure. *United States v. Moreno-Tapia*, 848 F.3d 162, 169 (4th Cir. 2017). For instance, in *Mendoza-Lopez*, the Court found that the respondents did not knowingly and validly waive their rights to appeal. 481 U.S. at 840. Because the IJ in that case did not adequately explain to the

---

[1] Itehua also notes that the IJ failed to provide him with a list of pro bono legal service providers and did not advise him of his right to contest the allegations against him. Because Itehua raises these two issues only to preserve them for appeal, this Opinion will not address them.

2

respondents that they might be eligible for suspension of deportation, they did not know of any basis upon which to appeal. *Id.* at 840, 842. The "fundamental procedural defects of the deportation hearing...rendered direct review...unavailable." *Id.* at 841.

To demonstrate fundamental unfairness as the third factor of the test requires, a defendant must show that (1) defects in his underlying deportation proceeding violated due process, and (2) he suffered prejudice as a result. *El Shami*, 434 F.3d at 664. To establish prejudice, the defendant must demonstrate that, but for the errors in his proceeding, there was a "reasonable probability" that he would have avoided deportation. *Id.* at 665.

### B. *Voluntary Departure*

Itehua argues that the government relies on a flawed underlying deportation order because the IJ did not properly inform him of his eligibility to seek voluntary departure. The Code of Federal Regulations requires immigration judges to "inform the alien of his or her apparent eligibility to apply for any of the benefits enumerated in this chapter and shall afford the alien an opportunity to make application during the hearing." 8 C.F.R. § 1240.11(a)(2).

Voluntary departure allows aliens to leave the country willingly in lieu of deportation. 8 U.S.C. § 1229c; *Dada v. Mukasey*, 554 U.S. 1, 8 (2008). It "facilitates the possibility of readmission," by eliminating the lengthy waiting periods attending involuntary removal. *Dada*, 554 U.S. at 11–12. An alien may apply for voluntary departure *before* the conclusion of removal proceedings, or the alien may request voluntary departure *at* the conclusion of removal proceedings. *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 813 (BIA 1999). Different eligibility requirements apply depending on when the alien makes the voluntary departure request. *Id.* at 814. To receive voluntary departure at the conclusion of proceedings, an alien must show:

(A) the alien has been physically present in the United States for a period of at least one year immediately preceding the date the notice to appear was served under section 1229(a) of this title;
(B) the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure;
(C) the alien is not deportable under section 1227(a)(2)(A)(iii) or section 1227(a)(4) of this title;[2] and
(D) the alien has established by clear and convincing evidence that the alien has the means to depart the United States and intends to do so.

8 U.S.C. § 1229c(b)(1).

If an alien applies before removal proceedings conclude, he must concede removability, waive appeal, have no aggravated felony convictions, and pose no threat to national security. *Arguelles-Campos*, 22 I. & N. Dec. at 815. To receive pre-conclusion voluntary departure, an alien need not show good moral character or that he has the financial means to depart. *Id.* at 817. An alien cannot receive either type of voluntary departure if an IJ previously permitted him to depart voluntarily. 8 U.S.C. § 1229c(c). The IJ has discretion regarding these applications, and should consider factors such as the nature and circumstances of the grounds for deportation, additional immigration violations, criminal record, and character. *Arguelles-Campos*, 22 I. & N. Dec. at 817. Certain circumstances, like long residence and family in the United States, can mitigate adverse factors. *Id.*

### C. *Application to Itehua's Case*

The parties do not focus on the first two factors necessary to attack Itehua's removal order, so the Court will address them only briefly. The 2011 hearing transcript indicates that the IJ asked Itehua if he had sufficient funds to leave the country voluntarily,[3] but did not otherwise

---

[2] An alien is deportable under § 1227(a)(2)(A)(iii) if he has been convicted of an aggravated felony. An alien is deportable under § 1227(a)(4) if he poses a threat to public safety, national security, or the government.

[3] Whether an alien has the financial means to depart should not factor into the pre-conclusion voluntary departure analysis. *Arguelles-Campos*, 22 I. & N. Dec. at 817 (emphasis added).

4

address voluntary departure. As in *Mendoza-Lopez*, the IJ did not adequately explain to Itehua that he might qualify for relief—namely, voluntary departure—so he did not understand that he had anything to appeal. Thus, Itehua did not have the opportunity to seek judicial or administrative review.

As for the fundamental fairness factor, the parties dispute both whether the IJ's error violated due process and whether Itehua suffered prejudice as a result. The government argues that an individual does not have a due process right to discretionary relief, including voluntary departure. The government, however, fails to recognize two key distinctions. First, a right to seek relief differs from a right to the relief itself. *United States v. Copeland*, 376 F.3d 61, 72 (2d Cir. 2004). In *Copeland*, the Second Circuit determined that an IJ's failure to inform an eligible alien of his right to discretionary relief, when prejudicial, constitutes a fundamental procedural error. 376 F.3d at 72. Similarly, in *El Shami*, the Fourth Circuit identified a due process problem with the defendant's deportation proceedings in part because he did not have an opportunity to seek relief from an IJ. *El Shami*, 434 F.3d at 665.

Second, the government fails to distinguish between appealing an IJ's disposition regarding discretionary relief from deportation, and challenging the validity of a prior deportation in a criminal prosecution for illegal reentry. In *Smith v. Ashcroft*, a case involving the former scenario, the Fourth Circuit found that a habeas corpus petitioner had no due process interest in receiving discretionary relief from an IJ. 295 F.3d 425, 429 (4th Cir. 2002). In contrast, the panel observed that due process requires courts to review underlying deportation proceedings when the government criminally prosecutes a defendant for illegal reentry. *Id.* at 430–31. This case implicates the latter scenario, as it involves a criminal prosecution dependent upon an underlying immigration hearing. *Mendoza-Lopez* established that a defendant, like

Itehua, can collaterally attack a deportation that constitutes an element of a later crime, regardless of the discretionary nature of relief available at the initial deportation proceeding. *United States v. Wilson*, 316 F.3d 506, 515 (4th Cir. 2003) (Motz, J., concurring) (also noting that criminal defendants have a liberty interest in avoiding imprisonment based on a fundamentally unfair deportation proceeding).

Thus, the due process issue in this case concerns not whether the Constitution mandates relief from deportation, but whether the IJ committed a fundamentally unfair procedural error by failing to inform Itehua of the possibility of that relief and neglecting to allow him to apply during his hearing. *See Copeland*, 376 F.3d at 72. The CFR required the IJ to inform Itehua of relief for which he might be eligible. 8 C.F.R. § 1240.11(a)(2). Based on the relevant factors, Itehua might have been eligible for voluntary departure at the time of his 2011 hearing. Because the IJ failed to inform him of this possibility, Itehua has satisfied the due process prong.

The second prong of the fundamental fairness analysis—prejudice—evaluates whether Itehua had a reasonable probability to avoid deportation if the IJ had not erred. If Itehua had the opportunity to apply for pre-conclusion voluntary departure, he likely would have qualified because he had no aggravated felony convictions and did not pose a threat to national security. Though post-conclusion voluntary departure requires a greater showing, Itehua had a reasonable probability to receive relief, even accounting for the IJ's discretion. At the time of his proceedings, he had a U.S. citizen child, had lived and worked in the country for over a decade, and had a limited criminal history. He also indicated he had family and friends who could have helped him fund the trip to Mexico in 2011.

The government asserts that documents from subsequent immigration proceedings demonstrate Itehua would not have asked for voluntary departure even if he knew he might

qualify. The Court does not give much weight to Itehua's actions in later proceedings. *See United States v. Scott*, 394 F.3d 111, 118 (2d Cir 2005) (determining that the "prejudice inquiry does not extend beyond the fairness of the deportation order itself," and refusing to consider later facts). In addition to his assertion that he would have requested voluntary departure had he known to do so, Itehua's actions surrounding the 2011 proceedings signify a reasonable probability he would have applied. He seemed eager to seek release from ICE custody and return to Mexico, and voluntary departure could have helped him achieve those goals. Thus, Itehua has established at least a reasonable probability both that he would have pursued voluntary departure and that the IJ would have granted his application.

Itehua satisfies all three factors needed to collaterally attack the underlying 2011 deportation order. Because the order was fundamentally unfair, the government cannot use it to charge Itehua with illegal reentry.

### III. CONCLUSION

Itehua has met the requirements for collaterally attacking his 2011 deportation order. As such, the government cannot rely on that order to convict Itehua for illegal reentry. The Court grants Itehua's motion to dismiss the indictment for illegal reentry.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: March 26, 2018
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

7